The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The opinion has been rewritten for clarity.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. All parties are properly before the Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the parties at all relevant times.
3. Plaintiff's applicable average weekly wage is $395.60.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 50 years old. Plaintiff has a high school education and became employed with Eaton Corporation in October of 1972.
2. Plaintiff was assigned to the K45 Department in 1975, and remained there until she left employment with defendant. Plaintiff was an Assembly Operator at K45, which was the coil-winding department. Plaintiff job duties included making coils, soldering wires, completing the entire coil, and sending it down the line in a tray. Plaintiff worked with Litz wire and her actions involved greasing, soldering, and welding.
3. During 1992, K45 was moved to a location within the plant near K50, where heavy wire and cable were soldered and glued with a quick-dry glue. A larger suction hood was placed over her workstation during 1992 to direct exhaust fumes away from her face.
4. Plaintiff had abdominal pain off and on since she began working for defendant. This pain continued after she left.
5. Plaintiff's eyes itched and burned while she worked in K45's old location and in its new one. Plaintiff has long-standing problems with allergies to various substances both inside and outside of defendant's workplace, including life-threatening reactions to Amoxicillin in March of 1991 and to Septra in February of 1992. Plaintiff is allergic, among other things, to plastic and glue in rubber bands, ply bond, oils, epoxy, hydrocarbon exhaust, formaldehyde, garden sprays, detergent, Band-Aids, sulfa, penicillin, Betadine, permanent wave solution, Clorox, and various other household and industrial cleaning chemicals. These allergies represent personal sensitivities.
6. Plaintiff saw her family practitioner, Dr. John Wander, for abdominal pain on July 13, 1992. Because she had rectal bleeding and a family history of colon cancer, Dr. Wander referred plaintiff to Dr. Thomas Bond, a gastroenterologist, for a colonoscopy.
7. Dr. Bond first saw plaintiff on August 1, 1992. The colonoscopy was negative. Dr. Bond diagnosed hemorrhoid disease unrelated to plaintiff's employment.
8. Dr. Bond again saw plaintiff on October 2, 1992 with additional complaints of abdominal pain. Dr. Wander had previously done a CT scan in relation to these complaints and the scan revealed a diffusely enlarged liver secondary to fat. Liver enzyme tests were normal, but plaintiff's cholesterol was elevated.
9. On October 14, 1992, a percutaneous liver biopsy was performed. It showed no evidence of any liver cell damage, with normal functions, and a benign lever condition.
10. Dr. Henry Lesesne, a liver specialist at UNC, was consulted about these findings and determined that only gross liver enlargement could be causing plaintiff's symptoms. He suggested a low-fat diet to reduce the size of the liver and therefore diminish the pain.
11. Plaintiff's pain continued and she was referred to Dr. Paul Killenberg at Duke University on February 19, 1993. Dr. Killenburg diagnosed plaintiff's pain as being unrelated to her liver.
12. Dr. Bond saw plaintiff on October 4, 1994 and reviewed plaintiff's September, 1994 lab work. Her tests showed a very mild elevation in liver function for the first time. This very mild elevation gave no reason for a repeat liver biopsy.
13. On March 8, 1995, plaintiff's liver functions had risen to 3-4 times the normal range and her cholesterol remained elevated despite plaintiff's being on a very low fat diet. Dr. Lesesne suggested a cholesterol-lowering drug at this time. This drug, however, was not effective. Lab work taken April 17, 1995 showed that plaintiff's cholesterol remained elevated at 238 and her liver function remained elevated at 3-4 times normal.
14. In April, 1993, plaintiff returned to work and immediately had allergic reactions: itchy, watery eyes, swelling, breathing problems, and sleeplessness. Plaintiff visited Dr. Steiner on August 18 and reported problems with itching and swelling from working with Litz wire.
15. On August 30, 1993, plaintiff's work involved scraping the flashing off parts. Plaintiff had an acute allergic reaction which caused her to make two trips to the emergency room at Park Ridge. On the second trip she was taken to St. Joseph's Hospital. Plaintiff returned to work September 1, 1993 and had the same allergic problems, including swelling. Dr. Wander removed her from work the following Tuesday. Plaintiff has never returned to work. Plaintiff experiences allergic reactions with greater frequency but less severity since being out of work.
16. Plaintiff began seeing Dr. Donald Russell, an allergist, in September, 1993. Dr. Russell was unable to identify any one possible chemical trigger of plaintiff's symptoms.
17. Plaintiff has not suffered an injury by accident nor an occupational disease. The condition suffered by plaintiff was not due to causes or conditions of and peculiar to her employment. Plaintiff's reactions in defendant's workplace occurred as a result of personal sensitivities to chemicals. Plaintiff is able to return to work in any location where chemicals are not present to which plaintiff has these personal sensitivities.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's problems did not result from an injury by accident arising out of and in the course of her employment with defendant-employer. N.C.G.S. 97-2(6).
2. Plaintiff has no disease and no disability related to causes and conditions which were characteristic of and peculiar to her employment with defendant-employer. N.C.G.S. 97-53(13).
3. Plaintiff's allergic condition is caused by her personal sensitivity to numerous chemicals, metals, and compounds.Sebastian v. Hair Styling, 40 N.C. App. 30,254 S.E.2d 921, disc. rev. denied, 297 N.C. 301, 254 S.E.2d 921
(1979).
4. Plaintiff, therefore, is entitled to no compensation under the provisions of the North Carolina Workers' Compensation Act. N.C.G.S. 97-2 (6); N.C.G.S. 97-53 (13).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Under the law, plaintiff's claim must be, and hereby is, DENIED.
2. Each side shall bear its own costs of this appeal.
 S/ _____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _____________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________ COY M. VANCE COMMISSIONER